UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHNNIE CHARLES,
               Plaintiff,

v.

ROCKLAND COUNTY OFFICE OF THE
SHERIFF, LOUIS FALCO III, ANTHONY J.
VOLPE, LT. JOHN BYRON, RICHARD
MCNICHOL, and HASSON DOSWELL,
               Defendants.
------------------------------------------------------------x

Copy Mailed by Chambers 3-21-19 DH

**OPINION AND ORDER**

16 CV 166 (VB)

Briccetti, J.:

    Plaintiff Johnnie Charles, an inmate proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, against the Rockland County Sheriff's Office,[1] Sheriff Louis Falco III, Chief of Corrections Anthony Volpe, Lieutenant ("Lt.") John Byron, Corrections Officer ("C.O.") Hasson Doswell (collectively, the "Rockland County defendants"), and former C.O. Richard McNichol,[2] alleging violations of plaintiff's constitutional rights.

    Now pending are cross motions for summary judgment from the Rockland County defendants (Doc. #181), McNichol (Doc. #190), and plaintiff (Docs. ## 218, 222).

    For the reasons set forth below, the Rockland County defendants' motion and McNichol's motion are GRANTED, and plaintiff's motion is DENIED.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]     Incorrectly sued herein as Rockland County Office of the Sheriff.

[2]     McNichol is no longer employed as an RCCF corrections officer, so the Court will not refer to him as a corrections officer here.

**BACKGROUND**

All parties submitted briefs, statements of material facts, declarations, and supporting exhibits. Together, they reflect the following relevant background.

All events giving rise to this action occurred when plaintiff was a pre-trial detainee at the Rockland County Correctional Facility ("RCCF").

I. <u>May 11, 2015, Assault</u>

On May 11, 2015, at about 5:30 p.m., plaintiff was fulfilling his duties as a "facility trustee," sweeping, cleaning, and serving meals to other inmates in the housing unit of RCCF's B-Wing. C.O. Doswell was also on the floor of the B-Wing, and McNichol was in the control room. McNichol noticed that inmate James Sanders's cell food slot appeared to be closed, so from the control room, McNichol automatically opened Sanders's cell door in order for someone to retrieve Sanders's tray. Sanders suddenly ran onto the floor with his hard-plastic meal tray, struck plaintiff in the back of the head, and continued to punch plaintiff when he collapsed to the floor. From the initial blow, plaintiff was knocked unconscious and does not recall the incident. (Doc. #184-4 ("Pl. June 20, 2017 Dep.") at 22).

Within seconds, C.O. Doswell ran to stop Sanders's assault, directed Sanders into his cell, and locked him in. Meanwhile, from the control room, McNichol called for all officers to respond, and numerous corrections officers arrived to secure the cell block. These reactions are confirmed by video surveillance footage from a camera inside the control room, which shows a disturbance through the control room windows, an officer immediately running toward the disturbance, and seventeen seconds later, several other officers responding. (Doc. #184-12, at 17:43:08–17:43:25). Plaintiff was taken to Nyack Hospital for a head laceration, which required

six staples. Plaintiff suffered a concussion, which he claims has resulted in daily headaches, dizziness, and other symptoms.

Plaintiff never had any interactions with Sanders before the assault on May 11, 2015. (Pl. June 20, 2017, Dep. at 18). According to plaintiff, Sanders had never spoken to or threatened plaintiff, and plaintiff had never complained to Jail officials about Sanders. (Id.). At his deposition, plaintiff said he had no enemies. (Id.).

Furthermore, Sanders had no prior known history of assault at RCCF. (Doc. #184-6 at ECF p. 29). Sanders was on disciplinary lock-in at the time of the assault, but officers instituted Sanders's lock-in because Sanders had failed to comply with a direct order. (Id. at ECF p. 69).

II. <u>Grievances</u>

Two days after the assault, on May 13, 2015, plaintiff submitted a grievance that "stems from negligence, unsafe, and violating of compilation of codes." (Doc. #184-6 at ECF p. 42). Lt. Byron denied the grievance, finding it was vague and unclear. On May 26, 2015, plaintiff submitted a revised grievance requesting an investigation into his attack and asking for additional protective measures to prevent future attacks. Lt. Byron found the grievance was "very vague and rambles on." (Id. at ECF p. 55). On May 28, 2015, Lt. Byron met with plaintiff to discuss his grievances and determined that plaintiff complained that security measures failed to prevent his attack, and that he wanted an investigation into the incident and additional protective measures to prevent a similar incident in the future. (Id.). Lt. Byron sent this information to Chief Volpe.

On June 4, 2015, Chief Volpe sustained plaintiff's grievance, ordered RCCF personnel to conduct an internal investigation, and turned the matter over to the Sherriff's Police Division for an external investigation. (Doc. #184-6 at ECF p. 58).

**DISCUSSION**

I.   Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The

mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004). The Court need only consider evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II. Failure to Protect and Failure to Intervene

Defendants argue there is no evidence of defendants' failure to prevent plaintiff's assault on May 11, 2015, because defendants had no reason to suspect that plaintiff faced a risk of harm.

The Court agrees.

It is well settled that "[p]rison officials have a duty to . . . protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (internal quotation omitted). Because plaintiff was a pretrial detainee at all relevant times, the Court analyzes his failure to protect claim under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (quoting Iqbal v. Hasty, 490 F.3d 143, 168 (2d Cir. 2007)); Taylor v. City of New

York, 2018 WL 1737626, at *12 (S.D.N.Y. Mar. 27, 2018) (applying Darnell to failure-to-protect claims).[3]

To establish that defendants failed adequately to protect plaintiff, plaintiff must satisfy two prongs: an objective prong and a mens rea prong.[4] As relevant here, under the mens rea prong, a pretrial detainee must demonstrate "that the defendant-official acted intentionally . . . or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known," of the risk. Darnell v. Pineiro, 849 F.3d at 35. The Fourteenth Amendment's mens rea prong "is defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." Id.

In the Eighth Amendment context, which requires subjective awareness of a risk, courts have routinely denied failure-to-protect claims when a defendant did not know an inmate faced an attack by another inmate. Parris v. New York State Dep't Corr. Servs., 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) (finding plaintiff must allege "defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff); Fernandez v. New York City Dep't of Correction, 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010). The same rationale can apply to failure-to-protect claims under the Fourteenth Amendment. Although Fourteenth Amendment claims only require that defendants have an

---

[3] Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[4] Although defendants do not explicitly concede that the assault was "sufficiently serious," as the objective prong of the Due Process Clause requires, Darnell v. Pineiro, 849 F.3d at 29–30 the only basis on which they seek summary judgment is that plaintiff provides no evidence as to the mens rea prong.

objective awareness (i.e., that defendant should have known), that standard is not satisfied when the surprise attack was a surprise to everyone involved, including plaintiff.

Plaintiff identifies no evidence in the record that would allow a reasonable juror to find, at the very least, that defendants should have known plaintiff faced an impending attack by Sanders or any other inmate. First, plaintiff admits he did not fear Sanders specifically. In fact, plaintiff never had any interactions with inmate Sanders before the assault on May 11, 2015. Sanders had never spoken to, much less threatened, plaintiff. Plaintiff certainly did not complain to RCCF officers about Sanders. Second, plaintiff offers no reason why defendants should have suspected Sanders was a threat generally. Sanders had no prior history of violence at RCCF. Indeed, plaintiff concedes as much when he describes Sanders's attack as sudden and unexpected. (Am. Comp. ¶ 62). Third, plaintiff does not allege he faced a general risk from other inmates in RCCF. According to plaintiff, he had no enemies.

Plaintiff argues that in remotely accessing Sanders's cell, McNichol acted with reckless disregard to plaintiff's safety, because Sanders was on disciplinary lock-in and McNichol violated internal procedures by not notifying C.O. Doswell that he (McNichol) was remotely opening the cell. However, plaintiff offers no facts to suggest McNichol should have known this action would endanger plaintiff. McNichol had no reason to suspect Sanders would become violent. Sanders had no known prior history of assault at RCCF, and was on disciplinary lock-in, not for a violent offense, but for failing to comply with a direct order.

Even if McNichol's failure to notify C.O. Doswell violated internal rules, that failure does not rise to the level of a constitutional violation. Therefore, plaintiff fails to demonstrate McNichol acted with reckless disregard to plaintiff's safety.

Finally, to the extent plaintiff argues defendants failed to intervene once the attack began (Pl. Br. at 23), the record definitively shows corrections officers immediately responded to the incident. Video footage depicts C.O. Doswell immediately running toward the assault with several additional officers arriving seventeen seconds later. Plaintiff cannot contradict that account himself, as he concedes he does not remember any part of the incident. Plaintiff's "unsubstantiated speculation" that C.O. Doswell did not respond immediately does not raise a genuine issue of material fact. See Brown v. Eli Lilly & Co., 654 F.3d at 358.

Accordingly, defendants are entitled to summary judgment on plaintiff's Fourteenth Amendment claims for failure to protect and failure to intervene.

III.     Denial of Access to the Courts

To the extent plaintiff asserts a claim against defendants for failure to accept his grievances, the Court construes this as a denial of access to the courts claim, and this claim is dismissed.

As a preliminary matter, notwithstanding the First Amendment's guarantee of the right to petition the government for redress, "inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983." Cancel v. Goord, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001). Therefore, construing plaintiff's claim as a denial of access to the courts, plaintiff must demonstrate "that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (alterations in original) (internal quotation omitted).

Plaintiff presents no evidence that he was hindered in his efforts to pursue a legal claim. To the contrary, the undisputed facts demonstrate plaintiff filed a grievance stemming from the

8

May 11, 2015, assault, and Chief Volpe sustained plaintiff's grievance, ordering both internal and external investigations.

Accordingly, plaintiff's claim concerning defendants' failure to accept his grievances is dismissed.

IV. Retaliation

Defendants argue plaintiff fails as a matter of law to demonstrate he was subject to retaliation for filing grievances concerning the May 11, 2015, assault.

The Court agrees.

To prove a retaliation claim under the First Amendment, "a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation omitted). Regarding the second element, "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." Nelson v. McGrain, 596 F. App'x 37, 38 (2d Cir. 2015) (summary order) (quoting Davis v. Goord, 320 F.3d at 353). Moreover, in view of "the ease with which claims of retaliation may be fabricated, [courts] examine prisoners' claims of retaliation with skepticism and particular care." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

Plaintiff's amended complaint is not a model of clarity or specificity. He alleges corrections officers "verbally harassed" him and filed "false misbehavior reports" against him. (Am. Compl. ¶ 66). In the body of his complaint, plaintiff alleges only that officers said he would not succeed in this lawsuit and "was not going to be getting any money and that nothing

9

[was] going to be done." (Id.) Plaintiff also attached sixty-seven pages of infractions and grievances to his amended complaint as "Exhibit Z." (Doc. #184-1 at ECF pp. 178-244). After thoroughly reviewing these infractions and grievances, it is clear to the Court that plaintiff fails to raise a genuine issue of material fact as to whether defendants took adverse actions against him.

Plaintiff claims (i) corrections officers verbally harassed him; (ii) an officer once limited plaintiff's access to the law library computer; (iii) the same officer gave plaintiff an infraction for refusing to lock-in; (iv) an officer gave plaintiff an infraction for refusing to change cells; and (v) an officer gave plaintiff an infraction for verbally harassing staff.

These alleged acts do not constitute adverse actions as a matter of law. Vague, non-specific allegations of verbal harassment "do not constitute adverse actions sufficient to state a retaliation claim." Ross v. Westchester Cnty. Jail, 2012 WL 86467, at *7 (S.D.N.Y. Jan.11, 2012). The temporary inability to get access to a library computer is a minor inconvenience and does not constitute an adverse action. Olutosin v. Lee, 2018 WL 4954107, at *10 (S.D.N.Y. Oct. 12, 2018). In addition, although the filing of <u>false</u> misbehavior reports can constitute an adverse action, plaintiff offers no evidence these misbehavior reports were <u>actually</u> false. To the contrary, in the attached grievances, plaintiff concedes that he disobeyed direct orders when he refused to lock-in or change cells. And, after a hearing, plaintiff was found guilty of verbally harassing staff.

Furthermore, even if these were adverse actions, plaintiff fails to offer any evidence from which a reasonable juror could infer a causal connection between those actions and his prior grievance. Plaintiff fails to say who falsely filed grievances against him, how these officers were connected to the May 11, 2015, assault, and why they sought to retaliate against him.

10

Therefore, plaintiff fails to raise a genuine issue of material fact that defendants took adverse action against him or that a causal connection exists between that action and his prior grievance.

Accordingly, defendants are entitled to summary judgment on plaintiff's First Amendment retaliation claims.

V. Monell Claim

Because plaintiff has not made out a claim for a constitutional violation, Rockland County[5] and the defendants in their official capacity is entitled to summary judgment on plaintiff's Monell claim.

To impose liability on a municipality in a Section 1983 action, a plaintiff must establish that the municipality's formal or informal policies caused the denial of the plaintiff's constitutional rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) ("Monell"). Municipalities are not liable for injuries inflicted solely by their employees or agents. Id.

Here, plaintiff has not produced any evidence upon which a reasonable factfinder could find that his constitutional rights were violated. In the absence of any denial of a constitutional right, no Monell claim lies against a municipality. Mittelman v. Cty. of Rockland, 2013 WL 1248623, at *16 (S.D.N.Y. Mar. 26, 2013) (citing Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir.1983)).

Accordingly, defendants are entitled to summary judgment on plaintiff's Monell claim.

---

[5] Although plaintiff proceeds against the Rockland County Sheriff's Office, plaintiff's Monell claim lies against Rockland County itself. Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Hayes v. Cty. of Sullivan, 853 F. Supp. 2d 400, 438 (S.D.N.Y. 2012). The Court therefore construes plaintiff's Monell claim as a claim against Rockland County.

## CONCLUSION

Defendants' motions for summary judgment are GRANTED.

Plaintiff's motion for summary judgment is DENIED.

The Clerk is instructed to terminate the motions (Docs. ##181, 190, 218, 222) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: March 21, 2019
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge